UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARPENTERS PENSION
TRUST FUND – DETROIT AND
VICINITY *et al.*,

        Plaintiffs,                      Case No. 16-cv-13928
                                                  Hon. Matthew F. Leitman

v.

BRUNT ASSOCIATES, INC. *et al.*,

        Defendants.

_____/

## ORDER (1) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF #62), (2) GRANTING IN PART AND DENYING IN PART DEFENDANT BRUNT ASSOCIATES, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT (ECF #60), AND GRANTING DEFENDANT BRIAN BRUNT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT (ECF #59)

In this action, Plaintiffs/Counter-Defendants Carpenters Pension Trust Fund – Detroit and Vicinity (the "Fund"), and two of its Trustees, Michael J. Jackson, Sr., and Thomas Woodbeck (the "Trustees," and, collectively with the Fund, "Plaintiffs"), seek to collect pension fund withdrawal liability allegedly owed by Defendants/Counter-Plaintiffs Brunt Associates, Inc. ("BAI") and Brian Brunt ("Brunt"). Plaintiffs have asserted three claims against Brunt and BAI, and Brunt and BAI have asserted a number of counterclaims against Plaintiffs.

Now pending before the Court are three motions: Plaintiffs' Motion for Summary Judgment (ECF #62); BAI's Motion for Judgment on the Pleadings or for Summary Judgment (ECF #60); and Brunt's Motion for Judgment on the Pleadings or for Summary Judgment (ECF #59). For the reasons explained below, Plaintiffs' motion is **DENIED**; BAI's motion is **GRANTED IN PART AND DENIED IN PART**; and Brunt's motion is **GRANTED**.

## I

## A

The events giving rise to this civil action occurred against the backdrop of two federal statutes that govern multiemployer pension plans: the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Multiemployer Pension Plan Amendment Act (the "MPPAA"), 29 U.S.C. §§ 1381-1461, *et seq.* It is easier to appreciate the significance of the underlying events here with an understanding of how those two statutes operate. Thus, the Court begins with a brief overview of the relevant aspects of ERISA and the MPPAA.

"Congress enacted ERISA to ensure that 'if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.'" *DiGeronimo Aggregates, LLC v. Zemla, et al.*, 763 F.3d 506, 509-10 (6th Cir. 2014) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 375 (1980)). "ERISA

also created the Pension Benefit Guaranty Corporation ("PBGC") to administer a newly-formed pension plan termination insurance program." *Id.* "Under that program, PBGC would collect insurance premiums from covered pension plans and provide benefits to participants in those plans if their plans terminate with insufficient assets to support the guaranteed benefits." *Id.*

After ERISA had been in place for several years, "a significant number of multiemployer plans" began experiencing "extreme financial hardship," and the PBGC became "overwhelmed by obligations in excess of its capacity." *Id.* At the direction of Congress, the PBGC analyzed the situation and determined that ERISA "failed to address the adverse consequences that occurred when an employer withdrew from a multiemployer pension plan." *Id.* To address this shortcoming in ERISA, the PBGC "proposed rules under which a withdrawing employer would be required 'to pay whatever share of the plan's unfunded vested liabilities was attributable to that employer's participation.'" *Id.* (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 723 (1984)). In response to the PBGC's proposal, Congress enacted the MPPAA. *Id.* "Relevant here, the MPPAA provides that if an employer withdraws from a multiemployer fund, it must make a payment of 'withdrawal liability,' which is calculated as the employer's proportionate share of the fund's 'unfunded vested benefits[.]'" *Id.* (quoting 29 U.S.C. § 1381(b)(1)).

The MPPAA contains "detailed" provisions concerning the manner in which a multiemployer fund may attempt to collect withdrawal liability from an employer and the process through which the fund and the employer must resolve disputes concerning withdrawal liability. *Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund., et al.*, 852 F.2d 156, 159-60 (6th Cir. 1988). First, "[o]nce the plan sponsors determine that an employer has completely or partially withdrawn from a pension plan, they must [1] notify the employer of the amount of the liability, [2] prepare a schedule for liability payments, and [3] demand payment in accordance with the schedule." *Id.* (citing 29 U.S.C. §§ 1382, 1399(b)(1)). Second, "[w]ithin 90 days after receiving notice, the employer may ask the plan sponsors to review any specific matter relating to the determination of liability and the schedule of payments, may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and may furnish any additional relevant information to the plan sponsor." *Id.* (citing 29 U.S.C. § 1399(b)(2)(A)). Third, "[a]fter reasonable review of any matter raised, the plan sponsors must then notify the employer of its decision, including the reasons for any change in the determination of the employer's liability or schedule of liability." *Id.* (citing 29 U.S.C § 1399(b)(2)(B)). Finally, if a dispute concerning the determination of withdrawal liability remains after the completion of this review process, the employer has 60 days to initiate arbitration proceedings. *See* 29 U.S.C.

§ 1401(a)(1)(A).[1]  Critically, "if an employer fails to [timely] demand arbitration, the assessment [of withdrawal liability] becomes 'due and owing on the schedule set forth by the plan sponsor.'" *Chi. Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund v. El Paso CGP Co.*, 525 F.3d 591, 595 (7th Cir. 2008) (quoting 29 U.S.C. § 1401(b)(1)).

**B**

The Fund is a multiemployer pension plan pursuant to Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3). (*See* Compl. at ¶4, ECF #1 at Pg. ID 2.)   The Trustees, Jackson, Sr., and Woodbeck, are two members of the Fund's board of trustees. (*See id.*)  The members of that board are the "plan sponsors within the meaning of … ERISA." (*Id.*)

BAI is a Michigan corporation that is in the building and construction industry. (*See* Countercls. at ¶52, ECF #28 at Pg. ID 731.)  Brian Brunt is the Vice-President of BAI and a 17% owner of the company. (*See* Brunt Aff. at ¶1, ECF #59-4 at Pg. ID 1454.)

---

[1] Alternatively, if the plan sponsors have not responded to a contributing employer's request for review of an assessment of withdrawal liability within 120 days of the request, the employer then has another sixty days within which to initiate arbitration. *See* 29 U.S.C. § 1401(a)(1)(B).

For many years, BAI has had a relationship with the Fund. More specifically, under a series of collective bargaining agreements, BAI has been a contributing employer to the Fund.[2] (*See* Countercls. at ¶5, ECF #28 at Pg. ID 719)

## C

In May of 2016, the Fund determined that BAI effected a complete withdrawal from the Fund within the meaning of Section 4203 of ERISA, 29 U.S.C. § 1583. As a result of that determination, the Fund assessed BAI $4,242,789.00 in withdrawal liability. The Fund then set out to notify BAI of the withdrawal determination and to collect the assessed withdrawal liability in accordance with the MPPAA procedures described above.

The Fund first attempted to notify BAI of the withdrawal liability determination by letter from Fund attorney David Malinowski dated May 24, 2016 (the "May 24 Letter"). Malinowski wrote in the May 24 Letter that the Fund had concluded that BAI had "effected a withdrawal from the Fund" and that the "withdrawal occurred during the Plan Year beginning May 1, 2015." (May 24 Letter, ECF #65-5 at Pg. ID 2392.) Malinowski also identified the amount of withdrawal liability determined to be owed by BAI: $4,242,789.00. (*See id.*) Finally, Malinowski demanded that BAI pay the withdrawal liability in accordance with a

---

[2] Two of the collective bargaining agreements are included in the record. (*See* ECF ## 59-10, 59-12.)

payment schedule that Malinowski included with the May 24 Letter. (*See* Payment Schedule, ECF #65-5 at Pg. ID 2394.) Thus, the May 24 Letter contained the three essential elements of a withdrawal liability notice under the MPPAA: the amount of the withdrawal liability, a demand for payment, and a schedule of liability payments. *See* 29 U.S.C. § 1399(b)(1).

The parties have offered competing evidence as to whether BAI actually received the May 24 Letter prior to the commencement of this action. Plaintiffs have presented evidence that Malinowski sent the May 24 Letter to BAI on May 24, 2016, "at their registered business address in Wixom, Michigan." (Malinowski Aff. at ¶4, ECF #62-5 at Pg. ID 2083.) Malinowski sent the letter to BAI via United Parcel Service ("UPS"). (*See* UPS Shipping Document, ECF #62-5 at Pg. ID 2092.) Plaintiffs have also submitted a UPS document entitled "Proof of Delivery" that purports to confirm that UPS delivered the letter to BAI's office in Wixom on May 25, 2016, at 10:06 a.m. (*See* UPS Proof of Delivery, ECF #62-5 at Pg. ID 2093-94.) The Proof of Delivery states that a person named "Johnson" signed for the letter on behalf of BAI. (*See id.*) The Proof of Delivery does not contain a signature by the person identified as Johnson. (*See id.*) Instead, it appears that a UPS employee typed Johnson's name into the Proof of Delivery document. (*See id.*) The Plaintiffs have further submitted a sworn affidavit from Ericka Johnson, a former BAI employee. (*See* Johnson Aff., ECF #62-3 at Pg. ID 2034.) In that affidavit, Johnson says that

she worked at BAI until May 31, 2016, that her job involved receiving and signing for mail and packages that were delivered to BAI's offices, and that it was her regular practice to hand such deliveries directly to Brunt or to leave them on his chair if he was not present. (*See id.* at ¶¶ 2, 4-5, Pg. ID 2034.) But Johnson did not specifically say in her affidavit that she received the May 24 Letter nor that she was even at the office on May 25, 2016 (the day UPS purports to have delivered it). And Plaintiffs have not submitted any employee time records from BAI confirming that Johnson was working on May 25, 2016, at the time that UPS allegedly made its delivery.

BAI countered Plaintiffs' evidence of receipt with a sworn affidavit from Brunt. Brunt first explained that Malinowski "misaddressed" the May 24 Letter. (Brunt Aff. at ¶4, ECF #59-4 at Pg. ID 1455.) Malinowski sent the May 24 Letter to BAI at 48953 Wixom Tech Dr., Unit D, Wixom, Michigan (*see* May 24 Letter and UPS Shipping Document, ECF #62-5 at Pg. ID 2087, 2092), but Brunt explained in his affidavit that there is no "Unit D" at that address. (*See* Brunt Aff. at ¶4, ECF #59-4 at Pg. ID 1455.) Brunt further swore that neither he nor any other BAI officer received the May 24 Letter at the time Malinowski sent it.[3] (*See* Brunt Aff. at ¶8, ECF #59-4 at Pg. ID 1456.) Brunt added that BAI was in the process of moving out

---

[3] Malinowski says that he also sent the May 24 Letter to an unidentified "registered agent" of BAI (*see* Malinowski Aff. at ¶5, ECF #62-5 at Pg. ID 2084), but Plaintiffs have not submitted any evidence that the unidentified agent actually received the letter.

of its Wixom office at the time that UPS claims to have delivered the May 24 Letter to "Johnson," and he said that his office furniture had been packed up before the alleged delivery. (*See* Brunt Suppl. Aff. at ¶¶ 5, 16, ECF #59-18 at Pg. ID 1684.) Thus, Brunt insisted that if the May 24 Letter had been delivered to Johnson, she could not have left it on his chair as she may have done with previous deliveries. (*See id.*)

By late July 2016, the Fund had not received any response to the May 24 Letter. It therefore decided to send a second letter from another of its attorneys, Paul Newcomer. Newcomer sent this letter on July 22, 2016, to Brunt personally at Brunt's home address (the "July 22 Letter"). (*See* July 22 Letter, ECF #59-5 at Pg. ID 1468.) The July 22 Letter expressed Newcomer's understanding that BAI "has ceased making contributions to the Pension Fund." (*Id.*) But it did not say that the Fund had determined that BAI had effected a complete withdrawal, did not identify any amount of withdrawal liability owed by BAI, and did not demand that BAI make payments toward withdrawal liability pursuant to any proposed schedule of payments. (*See id.*) Instead, the July 22 Letter merely expressed the Fund's intention to "obtain information from [BAI] that is necessary to assist [BAI] in satisfying their obligations to the Fund under ERISA." (*Id.* at Pg. ID 1468.) Neither BAI nor Brunt responded to the July 22 Letter.

On August 11, 2016, the Fund sent a third letter to Brunt and BAI (the "August 11 Letter"). (*See* August 11 Letter, ECF #59-6.) Malinowski wrote the August 11 Letter, and he mailed it to both BAI and Brunt. (*See id.* at Pg. ID 1500.) Brunt admits he received the August 11 Letter at his home. (*See* Brunt Aff. at ¶16, ECF #59-4 at Pg. ID 1457.) Malinowski first wrote in the August 11 that a "Notice of Demand for Payment of Withdrawal Liability was forwarded to your attention on May 24, 2016." (August 11 Letter, ECF #59-6 at Pg. ID 1500.) This was a reference to the May 24 Letter that, as described above, BAI and Brunt say that they did not receive. Malinowski then told Brunt and BAI that the amount of BAI's withdrawal liability "is $4,242,789.00." (*Id.*) The rest of the August 11 Letter provided as follows:

> The notice called for payment of your withdrawal liability in one of two ways:
>
> 1. The entire outstanding obligation on or before August 1, 2016; or
>
> 2. By monthly installments in accordance with the payment schedule which accompanied the notice and demand. These installments include amortization charges on the unpaid balance.
>
> Your account is past due. Please note that interest is charged on the delinquent monthly installments. To avoid future collection enforcement activity, please forward payment for the above balance ***immediately*** to the following address:
>
> NOVARA TESIJA, P.L.L.C. Attention: David Malinowski 2000 Town Center, Suite 2370 Southfield, MI 48075-1314

If payment is not received with ***60 days*** from the date of this notice you will be held in default in accordance with Section 4219 of ERISA, and the account will be reviewed for collection.

(*Id.*; emphasis in original.) While the August 11 Letter referenced the proposed payment schedule that Malinowski included with the May 24 Letter (which Brunt and BAI allege that they did not receive), the August 11 Letter did not restate or include that payment schedule (or any other payment schedule). Neither BAI nor Brunt responded to the August 11 Letter.

## D

On November 4, 2016, Plaintiffs filed this "action for collection of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan." (*See* Compl. at ¶1, ECF #1 at Pg. ID 1.) Plaintiffs assert three claims for relief.

First, in Count I, Plaintiffs allege that both BAI and Brunt personally are "jointly and severally" liable for the withdrawal liability identified in the Fund's letters (described above) because (1) BAI and Brunt "received a notice and demand for payment of withdrawal liability" that was issued "in accordance with" the MPPAA and (2) BAI and Brunt "did not timely initiate arbitration" under the MPPAA. (*Id.* at ¶¶13-15, Pg. ID 3.)

Second, in Count II, Plaintiffs allege that Brunt individually engaged in a transaction to evade ERISA liability. (*See id.* at Pg. ID 4.) More specifically, Plaintiffs claim that Brunt "transferred BAI assets to himself or other entities for the purpose of avoiding payment of BAIs' withdrawal liability." (*Id.* at ¶19, Pg. ID 4.) They contend that because Brunt engaged in such a transaction, he is personally liable for all of BAI's withdrawal liability. (*Id.* at ¶20, Pg. ID 4.)

Finally, in Count III, Plaintiffs assert that Brunt individually "breached his fiduciary duty to the Fund and is personally liable to the Fund for such a breach." (*Id.* at ¶28, ECF #1 at Pg. ID 6.) The key allegations underlying this claim are as follows:

> 23. Unpaid withdrawal liability is treated in the same manner as delinquent contributions under 29 U.S.C. §1451; ERISA §4301.
>
> 24. BAIs' unpaid contributions owed to the Funds became plan assets at the time they became due, within the meaning of ERISA §3(21)(A); 29 U.S.C. §1002(21)(A).
>
> 25. Brian Brunt as the owner and resident agent of BAI personally exercised authority and control over BAIs' unpaid fringe benefit contributions, which constitute assets of the Funds.
>
> 26. Brian Brunt is a plan fiduciary due to his exercise of authority and control over the Funds' assets, within the meaning of ERISA §3(21)(A); 29 U.S.C. §1002(21)(A).
>
> 27. By directing BAI assets, which were owed to the Fund, be paid to other creditors instead of being deposited with the Fund, Brian Brunt failed to discharge his fiduciary

duties with respect to the plan solely in the interest of the participants and beneficiaries as required by ERISA §404(a)(1); 29 U.S.C. §1104(a)(1).

28. As a result, Brian Brunt breached his fiduciary duty to the Fund and is personally liable to the Fund for such breach.

(*Id.* at ¶¶ 23-28, at Pg. ID 5-6.)

<strong>E</strong>

On December 7, 2016 – more than one month after Plaintiffs filed this civil action – counsel for Plaintiffs emailed a copy of the May 24 Letter to counsel for BAI and Brunt. (*See* Email, ECF #65-5 at Pg. ID 2391.) BAI and Brunt insist that that was the first time they actually received the May 24 Letter. (*See* Brunt Aff. at ¶¶ 9, 24, ECF #59-4 at Pg. ID 1456, 1459-60.)

<strong>F</strong>

Nearly two months after counsel for BAI and Brunt received a copy of the May 24 Letter, BAI "filed a demand for arbitration … via the on-line procedures for Multiemployer Pension Plans arbitration of the American Arbitration Association (AAA) and paid the filling fee." (Brunt Aff. at ¶24, ECF #59-4 at Pg. ID 1459-60; *see also* AAA Online Filing Acknowledgment, ECF #59-7 at Pg. ID 1504-06.) The "AAA confirmed the on-line filing and filing fee payment and docketed the arbitration demand" that same day. (Brunt Aff. at ¶25, ECF #59-4 at Pg. ID 1460; *see also* AAA Email Confirmation, ECF #59-7 at Pg. ID 1503.) BAI filed the Arbitration against the Fund and the Trustees (*i.e.*, the Plaintiffs in this civil action).

(*See* Online Filing Acknowledgment, ECF #59-7 at Pg. ID 1505-06.)  However,

according to Brunt, Plaintiffs refused to participate in the arbitration and threatened

to take action against Brunt and BAI if BAI did not withdraw the demand for

arbitration:

> Fund counsel did not file a response to the demand and did
> not agree to hold the arbitration in abeyance so settlement
> discussions could continue, but instead complained that
> the demand was in 'bad faith,' implied that settlement
> discussions would cease, and threatened continued
> litigation with sanctions sought unless BAI withdrew its
> arbitration demand.

(Brunt Aff. at ¶26, ECF #59-4 at Pg. ID 1460; citing emails between counsels, ECF

#59-8.)  In response to these threats, Brunt "authorized [his] counsel to withdraw

BAI's demand," and counsel did so. (*Id.*)

## G

After BAI withdrew its demand for arbitration, BAI and Brunt filed their

Second Amended Counterclaims in this action. (*See* Second Am. Countercls., ECF

#28.)  These counterclaims are somewhat unusual in that they resemble defenses

more than claims for relief; many of them are aimed at negating Plaintiffs' ability to

collect the withdrawal liability assessed against BAI rather than aimed at obtaining

affirmative relief for BAI and Brunt.  The specific counterclaims are as follows:

- Count 1: Brunt and BAI allege that Plaintiffs "violated and/or abused" the

  MPPAA processes and procedures for "acceleration of withdrawal liability

and filing suit therefor." (*Id.* at ¶¶51-52, Pg. ID 730.)  As relief, Brunt and BAI ask the Court, among other things, to rule that (1) Plaintiffs "failed to follow" the proper procedures under the MPPAA and (2) as a result, Plaintiffs cannot pursue this collection action.

- Count II: Brunt and BAI ask "this Court [to] declare the purported complete withdrawal determination and assessment of complete withdrawal liability null and void ab initio." (*Id.* at ¶¶58-61, Pg. ID 733-34.)

- Count III: Brunt, alone, alleges that he is a participant in the Fund and that Plaintiffs breached fiduciary duties owed to him by, among other things, erroneously assessing withdrawal liability against BAI. (*See id.* at ¶¶64-68, Pg. ID 735-38.)  As relief, Brunt seeks, among other things, a ruling that Plaintiffs failed to protect the Fund's assets by wrongly assessing withdrawal liability against BAI. (*See id.* at Pg. ID 738-39.)

- Count IV: Brunt and BAI allege that Plaintiffs are equitably estopped from assessing withdrawal liability against BAI. (*See id.* at ¶¶ 69-84, Pg. ID 739-44.)

- Count V: Brunt and BAI assert that the Fund's assessment of withdrawal liability against BAI is "null and void" because Plaintiffs "fraudulently, intentionally, or in bad faith represented that [Brunt and BAI] had ceased making employer contributions to the Counter-Defendant Pension Fund and

had ceased operations and had completely withdrawn from the Fund." (*Id*. at ¶93, Pg. ID 746.)

## H

There are three motions now pending before the Court: a motion by Brunt individually for judgment on the pleadings or for summary judgment on all of the claims against him personally in Plaintiffs' Complaint (*see* Brunt Mot., ECF #59); a motion by BAI for judgment on the pleadings or for summary judgment on all of the claims against it in Plaintiffs' Complaint (*see* BAI Mot., ECF #60); and a motion by Plaintiffs for summary judgment on all three of its affirmative claims and on all of Brunt and BAI's counterclaims. (*See* Plaintiffs' Mot., ECF #62.) The Court held a hearing on the three motions on April 17, 2019. Following the hearing, all parties filed supplemental briefs in response to questions from the Court. (*See* Supp. Briefs, ECF ## 91, 92.)

## II

As noted above, there are two types of motions pending before the Court: for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure and for summary judgment under Rule 56 of those rules. The governing legal standards for both motions are well-established.

A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same standards applicable to a motion to dismiss filed pursuant to Rule

12(b)(6). *See Lindsay v. Yates,* 498 F.3d 434, 437 n.5 (6th Cir. 2007) ("[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same"). Rule 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly,* 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly,* 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A movant is entitled to summary judgment under Rule 56 when it "shows that there is no genuine display as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. Indeed, "[c]redibility determinations, the weighing of the evidence and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

### III

The Court first considers Count I of Plaintiffs' Complaint. In that count, Plaintiffs seek to collect from BAI and Brunt "jointly and severally" the withdrawal liability that the Fund assessed against BAI. All parties have all moved for summary judgment on this claim.

## A

### 1

At this time, the Court will not enter summary judgment in favor of Plaintiffs or BAI on Plaintiffs' collection claim in Count I of their Complaint. The elements of that claim are: "(1) 'the Fund was a multiemployer pension plan and [BAI was] an employer for the purposes of ERISA,' (2) 'the Fund notified [BAI of its] assessed liability,' and (3) '[BAI] failed to timely initiate arbitration.'" *Chicago Truck Drivers*, 525 F.3d at 597 (quoting *Chicago Truck Drivers, et al. v. El Paso CGP Co., et al.*, 2006 WL 1037152, at *4 (N.D. Ill. April 17, 2006)). *See also PACE Industry Union-Mgmt. Pension Fund, et al. v. Troy Rubber Engraving Co*., 805 F. Supp. 2d 451, 458 (M.D. Tenn. 2011) (same); *Bd. Tr. for Mich. Carpenter's Council Pension Fund v. Raymond Acoustical, LLC*, 62 F. Supp. 3d 661, 664 (W.D. Mich. 2014) (same).

The first element is not in dispute; all parties agree that it is satisfied.

The second and third elements are disputed. Plaintiffs say that those elements are satisfied because BAI received the May 24 Letter – which, Plaintiffs insist, was a sufficient notice of withdrawal liability – and BAI failed to timely initiate arbitration. (*See, e.g.*, Compl. at ¶¶13, 15, ECF #1 at Pg. ID 3-4.) BAI counters that it did not receive the May 24 Letter prior to the commencement of this action and that that letter thus could not have, and did not, commence the time period during

which BAI could have sought review of the assessment by the Fund and then commenced arbitration.  (*See, e.g.*, BAI Mot., ECF #60 at Pg. ID 1704, 1706-08.)

As set forth in detail above, the record contains conflicting evidence as to whether, prior to the commencement of this action, BAI received the May 24 Letter. Plaintiffs' evidence tends to establish that BAI did receive the May 24 Letter the day after Malinowski sent it by UPS in May 2016.[4]  If that in fact happened, then BAI is

---

[4] Plaintiffs have submitted the UPS Proof of Delivery document in support of their effort to prove that BAI received the May 24 Letter the day after Malinowski sent the letter. (*See* UPS Proof of Delivery, ECF #62-5 at Pg. ID 2094.)  The UPS Proof of Delivery is hearsay because Plaintiffs rely upon it for the truth of the matter asserted – to prove that, as a UPS employee states in the document, the employee delivered the UPS package to "Johnson" at BAI. *See, e.g., Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.*, 77 A.3d 1, at *14 (Pa. Super. Ct. Aug. 6, 2013) (holding UPS invoices constitute hearsay since they "contain out-of-court statements regarding the cost of freight charged to JGB, and Keystone offered the invoices to prove those freight charges").  The Court may nonetheless consider the UPS Proof of Delivery in the context of Plaintiffs' opposition to BAI and Brunt's motions for summary judgment because its contents may be presented in admissible form. *See, e.g., Alexander v. CareSource*, 576 F.3d 551, 558-59 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) ("The submissions by a party opposing a motion for summary judgment need not themselves by in a form that is admissible at trial…. However, the party opposing summary judgment must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary") (emphasis in original).  For instance, it may be possible for Plaintiffs to lay a proper foundation for admission of the UPS Proof of Delivery as a business record under Federal Rule of Evidence 803(6). *See, e.g., Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 575-76 (6th Cir. 1999) (finding the district court did not abuse its discretion in admitting Federal Express delivery records under the business records exception since the party seeking to admit the records had laid the proper the foundation); *United States v. Pfeiffer*, 539 F. 2d 668, 670-71 (8th Cir. 1976)  (finding that delivery receipts were properly admitted where there was evidence as to the preparation and maintenance

now liable for the full amount of the alleged withdrawal liability because it failed to timely demand arbitration. However, BAI's evidence tends to establish that BAI did not receive the May 24 Letter when Malinowski sent it in May 2016. Under that scenario, BAI's time to seek review of the assessment by the Fund and to commence arbitration was not triggered at that time, and BAI's failure to initiate arbitration in response to the initial mailing of that letter would thus not entitle Plaintiffs to judgment on their collection claim.

The Court will resolve the question of whether BAI actually received the May 24 Letter when Malinowski sent it in May 2016 at a bench trial in this action.

**2**

Plaintiffs argue that even if BAI did not receive the May 24 Letter when Malinowski sent it in May 2016, they are nonetheless entitled to summary judgment. Plaintiffs contend, among other things, that BAI received *other* valid notices of its withdrawal liability – such as the August 11 Letter, the Complaint, and the December 7, 2016, email from Plaintiffs' counsel attaching the May 24 Letter – and that BAI is liable because it did not timely initiate arbitration after receiving those notices. In the alternative, Plaintiffs argue that BAI may not challenge in these

_____

of such records in the "course of a regularly conducted business activity"). If Plaintiffs wish to rely upon the UPS Proof of Delivery at trial, they must lay a proper foundation for its admission as a business record (or under some other theory) or otherwise present its content in admissible form (such as testimony from the UPS employee who allegedly delivered the package and completed the form).

proceedings whether it received sufficient notice of its liability because that issue is reserved for decision by an arbitrator.

The Court declines to decide these issues at this time because they involve difficult questions of statutory interpretation and application and because the Court may be able to resolve Plaintiffs' collection claim without addressing these issues. More specifically, if the Court finds that BAI actually received the May 24 Letter when Malinowski sent it in May 2016, there will be no need to address Plaintiffs' alternative arguments because it is undisputed that BAI did not timely initiate arbitration in the period following UPS's purported delivery of the May 24 Letter. And resolving the question of whether BAI actually received the May 24 Letter when Malinowski sent it in May 2016 will involve a straightforward factual inquiry – one that the Court can make without having to tackle any difficult statutory interpretation or application questions.

For all of these reasons, the Court's next order of business on Plaintiffs' collection claim against BAI will be to hear and decide at a bench trial the question of whether BAI received the May 24 Letter when Malinowski sent it in May 2016. Thereafter, if necessary, Court will revisit Plaintiffs' alternative arguments on this claim.

**B**

Next, while the Court declines to enter summary judgment in favor of Plaintiffs or BAI on Plaintiffs' collection claim, the Court will enter summary judgment in favor of Brunt, individually, on that claim. Brunt, in his individual capacity, was not an "employer" under ERISA, and thus he may be held liable for BAI's alleged withdrawal liability only if Plaintiffs present evidence sufficient to pierce BAI's corporate veil. *See Scarbrough v. Perez*, 870 F.2d 1079, 1083 (6th Cir. 1989) (holding that a corporation's sole shareholder and chief executive officer was not an "employer" under ERISA and therefore could not be held individually liable for the corporations' delinquent contributions to pension fund absent evidence sufficient to support veil-piercing). Plaintiffs have not presented any evidence that could support piercing BAI's corporate veil.

In the ERISA context, "the corporate veil may be pierced if the court finds 'substantial reasons for doing so' after considering three general factors: (1) 'the amount of respect given to the separate identity of the corporation by its shareholders;' (2) 'the degree of injustice visited on the litigants by recognition of the corporate entity,' and (3) 'the fraudulent intent of the incorporators.'" *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302–03 (6th Cir. 2005) (quoting *Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.,* 933 F.2d 376, 384 (6th Cir. 1991)). "In analyzing

these three general factors, courts frequently consider more specific factors such as 'undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham.'" *Id.* (quoting *Laborers Pension Tr. Fund v. Sidney Weinberger Homes,* 872 F.2d 702, 704–05 (6th Cir. 1988)).

Plaintiffs have not presented any proof that any of the veil-piercing factors identified above are satisfied here. Instead, Plaintiffs urge the Court to pierce BAI's corporate veil on the ground that Brunt is BAI's "only living, breathing shareholder," and the other shares are held by various trusts. (Plaintiffs' Response to Brunt Mot., ECF #65 at Pg. ID 2306.) But Brunt owns only 17% of BAI's shares. (*See* Brunt Aff. at ¶1, ECF #59-4 at Pg. ID 1454.) Plaintiffs have not cited any authority for the proposition that a 17% shareholder can be personally liable for a corporation's debts based upon nothing more than his status as a minority owner. Accordingly, Brunt cannot be held individually liable for BAI's alleged withdrawal liability, and he is therefore entitled to summary judgment on Plaintiffs' collection claim.

## IV

The Court now turns to Count II of Plaintiffs' Complaint which is captioned "Transaction to Evade Liability." (Compl., ECF #1 at Pg. ID 4.) Brunt is entitled to both judgment on the pleadings and summary judgment on this claim.

First, Brunt is entitled to judgment on the pleadings because Plaintiffs' Complaint does not identify the transaction that Brunt allegedly completed in order to evade liability. Rather, Plantiffs state in a conclusory fashion that "Defendant Brian Brunt transferred BAI assets to himself or other entities for the purpose of avoiding payment of BAIs' withdrawal liability." (*Id.* at ¶19, ECF #1 at Pg. ID 4.) That sort of conclusory allegation is insufficient.

Second, even if Plaintiffs had pleaded this claim sufficiently, Brunt would still be entitled to summary judgment. In Brunt's motion for summary judgment, he presented evidence that (1) he did not engage in a "transaction" to evade liability within the meaning of 29 U.S.C. § 1369 and (2) even if certain of his actions identified by Plaintiffs could be construed as "transactions," he did not undertake them with an intent to evade withdrawal liability. (*See* Brunt Mot., ECF #59 at Pg. ID 1442-43; *see also* Brunt Aff. at ¶28, ECF #59-4 at Pg. ID 1460; Brunt Supp. Aff. at ¶¶ 5-8, ECF #59-18 at Pg. ID 1682-83.) Plaintiffs have failed to counter Brunt's showing that he lacked an intent to evade withdrawal liability and have failed identify any additional transactions by Brunt that could have been undertaken to evade liability. Accordingly, the Court concludes that Brunt is entitled to summary judgment on Count II of Plaintiffs' Complaint.[5]

---

[5] It is not clear whether Plaintiffs are asserting the claim in Count II against BAI. To the extent that the claim is asserted against BAI, BAI is entitled to summary

**V**

The Court next addresses Count III of Plaintiffs' Complaint in which Plaintiffs allege that Brunt "breached his fiduciary duty to the Fund." (Compl., ECF #1 at Pg. ID 5-6.) Plaintiffs allege that BAI's unpaid contributions to the Fund were Fund assets, that Brunt had control over these assets, and that instead of depositing them with the Fund, he caused BAI to use these assets for other purposes. (*See id.*) Brunt is entitled to summary judgment on this claim.

Plaintiffs have failed to establish that Brunt owed a fiduciary duty to the Fund. "'Mere possession, or custody' over a plan's assets does not automatically lead to fiduciary status." *Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, 482 F. App'x 67, 69 (6th Cir. 2012) (quoting *Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006)). Such status exists where an individual has control over plan assets and is "clearly aware" of his status as a fiduciary. *Id.* Thus, in *Airtab*, the Sixth Circuit held that the owner and president of a corporation that failed to make contributions to an ERISA plan was not a fiduciary because he was not identified as such in the plan's governing documents and was not otherwise clearly aware of his alleged fiduciary status. *See id.* Here, Plaintiffs have not shown that Brunt was clearly identified as a fiduciary in any governing plan documents or that he was otherwise aware of his

judgment for the same reasons that Brunt is entitled to summary judgment on this claim.

26

purported fiduciary status.  Thus, like the individual defendant in *Airtab*, Brunt is entitled to summary judgment on Plaintiffs' breach-of-fiduciary-duty claim.

## VI

Finally, the Court turns to Plaintiffs' motion for summary judgment on the counterclaims by BAI and Brunt.  As noted above, these counterclaims are, in large part, an attack on the assessment of withdrawal liability by the Fund and an effort to avoid such liability.  Whether the Court needs to reach these counterclaims (in whole or in part) may depend on the Court's ruling on Plaintiffs' collection claim.  More specifically, if the Court rules in BAI's favor on Plaintiffs' collection claim, then either (1) the counterclaims may be moot in whole or in part and/or (2) BAI may have an opportunity to present its counterclaims in whole or in part to an arbitrator in a future arbitration (if the Fund recommences its effort to collect the withdrawal liability by serving a new notice).  And the counterclaims by BAI and Brunt, like the alternative arguments presented by Plaintiffs in support of their affirmative collection claim, present difficult legal questions.  The Court believes that the most sensible course of action is to avoid resolving the difficult legal issues presented by BAI's and Brunt's counterclaims at this time.  The Court will revisit the viability of the counterclaims, if necessary, after the bench trial on Plaintiffs' collection claim.

# VII

For all of the reasons explained above, **IT IS HEREBY ORDERED** as follows:

1. Brunt's motion for summary judgment (ECF #59) is **GRANTED**, and all of Plaintiffs' claims against Brunt, individually, are **DISMISSED WITH PREJUDICE**;

2. BAI's motion for summary judgment (ECF #60) is **GRANTED** to the extent that it seeks judgment in favor of BAI on Count II of Plaintiffs' Complaint, and that count against BAI is **DISMISSED WITH PREJUDICE**. In all other respects, BAI's motion for summary judgment or for judgment on the pleadings is **DENIED**;

3. Plaintiffs' motion for summary judgment is **DENIED**; and

4. The Court will hold a bench trial to resolve the factual dispute concerning whether BAI received the May 24 Letter when Malinowski sent it in May 2016. After the Court resolves that factual dispute and issues its post-bench-trial ruling, the Court will consult with the parties about next steps in this action.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: July 11, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 11, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113