UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARPENTERS PENSION
TRUST FUND – DETROIT AND
VICINITY *et al.*,

        Plaintiffs,                       Case No. 16-cv-13928
                                                  Hon. Matthew F. Leitman

v.

BRUNT ASSOCIATES, INC. *et al.*,

        Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO WHETHER DEFENDANT BRUNT ASSOCIATES, INC. RECEIVED PLAINTIFFS' NOTICE OF WITHDRAWAL LIABILITY

In this action, Plaintiffs/Counter-Defendants Carpenters Pension Trust Fund – Detroit and Vicinity (the "Fund"), and two of its Trustees, Michael J. Jackson, Sr., and Thomas Woodbeck (the "Trustees," and, collectively with the Fund, "Plaintiffs"), seek to collect pension fund withdrawal liability allegedly owed by Defendants/Counter-Plaintiffs Brunt Associates, Inc. ("BAI") and Brian Brunt ("Brunt"). On January 14, 2020, the Court held a bench trial on a narrow dispute that remained following the Court's rulings on the parties' cross-motions for summary judgment. That dispute is: did BAI receive from the Fund, on or about May 25, 2016, a Notice of Withdrawal Liability dated May 24, 2016 (the "May 24

1

Notice")?  For the reasons explained below, the Court concludes that BAI did receive the May 24 Notice on or about May 25, 2016.  And BAI thereafter failed (1) to timely ask the Fund to review the matters raised in the May 24 Notice and/or (2) to timely demand arbitration.  Therefore, BAI is obligated to pay the full amount of the assessed withdrawal liability to the Fund – unless BAI prevails on its counterclaims.

# I

The events giving rise to this civil action occurred against the backdrop of two federal statutes that govern multiemployer pension plans: the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., and the Multiemployer Pension Plan Amendment Act (the "MPPAA"), 29 U.S.C. §§ 1381-1461, *et seq*.  It is easier to appreciate the significance of the underlying events here with an understanding of how those two statutes operate.  Thus, the Court begins with a brief overview of the relevant aspects of ERISA and the MPPAA.

"Congress enacted ERISA to ensure that 'if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.'" *DiGeronimo Aggregates, LLC v. Zemla, et al.*, 763 F.3d 506, 509-10 (6th Cir. 2014) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 375 (1980)).  "ERISA also created the Pension Benefit Guaranty Corporation ("PBGC") to administer a newly-formed pension plan termination insurance program." *Id.*  "Under that

program, PBGC would collect insurance premiums from covered pension plans and provide benefits to participants in those plans if their plans terminate with insufficient assets to support the guaranteed benefits.*" Id.*

After ERISA had been in place for several years, "a significant number of multiemployer plans" began experiencing "extreme financial hardship," and the PBGC became "overwhelmed by obligations in excess of its capacity." *Id.* At the direction of Congress, the PBGC analyzed the situation and determined that ERISA "failed to address the adverse consequences that occurred when an employer withdrew from a multiemployer pension plan." *Id.* To address this shortcoming in ERISA, the PBGC "proposed rules under which a withdrawing employer would be required 'to pay whatever share of the plan's unfunded vested liabilities was attributable to that employer's participation.'" *Id.* (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 723 (1984)). In response to the PBGC's proposal, Congress enacted the MPPAA. *See id.* "Relevant here, the MPPAA provides that if an employer withdraws from a multiemployer fund, it must make a payment of 'withdrawal liability,' which is calculated as the employer's proportionate share of the fund's 'unfunded vested benefits[.]'" *Id.* (quoting 29 U.S.C. § 1381(b)(1)).

The MPPAA contains "detailed" provisions concerning the manner in which a multiemployer fund may attempt to collect withdrawal liability from an employer

3

and the process through which the fund and the employer must resolve disputes concerning withdrawal liability. *Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*., *et al.*, 852 F.2d 156, 159-60 (6th Cir. 1988).  First, "[o]nce the plan sponsors determine that an employer has completely or partially withdrawn from a pension plan, they must [1] notify the employer of the amount of the liability, [2] prepare a schedule for liability payments, and [3] demand payment in accordance with the schedule." *Id.* (citing 29 U.S.C. §§ 1382, 1399(b)(1)). Second, "[w]ithin 90 days after receiving notice, the employer may ask the plan sponsors to review any specific matter relating to the determination of liability and the schedule of payments, may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and may furnish any additional relevant information to the plan sponsor." *Id.* (citing 29 U.S.C. § 1399(b)(2)(A)).  Third, "[a]fter reasonable review of any matter raised, the plan sponsors must then notify the employer of its decision, including the reasons for any change in the determination of the employer's liability or schedule of liability." *Id.* (citing 29 U.S.C § 1399(b)(2)(B)).  Finally, if a dispute concerning the determination of withdrawal liability remains after the completion of this review process, the employer has sixty days to initiate arbitration proceedings. *See* 29

U.S.C. § 1401(a)(1)(A).[1]  Critically, "if an employer fails to [timely] demand arbitration, the assessment [of withdrawal liability] becomes 'due and owing on the schedule set forth by the plan sponsor.'" *Chi. Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund v. El Paso CGP Co.*, 525 F.3d 591, 595 (7th Cir. 2008) (quoting 29 U.S.C. § 1401(b)(1)).

## II

### A

The Fund is a multiemployer pension plan pursuant to Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3). (*See* Compl. at ¶4, ECF No. 1, PageID.2.)  The Trustees, Jackson, Sr., and Woodbeck, are two members of the Fund's board of trustees. (*See id.*)  The members of that board are the "plan sponsors within the meaning of … ERISA." (*Id.*)

BAI is a Michigan corporation that is in the building and construction industry. (*See* Countercls. at ¶52, ECF No. 28, PageID.731.)  Brian Brunt is the Vice-President of BAI and a 17% owner of the company. (*See* Brunt Aff. at ¶1, ECF No. 59-4, PageID.454.)  For many years, BAI was a contributing employer to the Fund. (*See* Countercls. at ¶5, ECF No. 28, PageID.719.)

---

[1] Alternatively, if the plan sponsors have not responded to a contributing employer's request for review of an assessment of withdrawal liability within 120 days of the request, the employer then has another sixty days within which to initiate arbitration. *See* 29 U.S.C. § 1401(a)(1)(B).

**B**

On November 4, 2016, Plaintiffs filed this action against BAI and Brunt. (*See* Compl., ECF No. 1.) Plaintiffs' Complaint asserts three claims. In Count I, Plaintiffs allege that BAI and Brunt received the May 24 Notice on or about May 24, 2016; that BAI failed to timely initiate arbitration after receiving the May 24 Notice; and that BAI was thus in default and owed the full amount of liability assessed in the May 24 Notice – more than $4 million. (*See id.*, PageID.2-4.) In Count II, Plaintiffs allege that Brunt and BAI conducted a transaction designed to evade BAI's withdrawal liability and that Brunt and BAI were therefore liable for the full amount of the assessed liability. (*See id.*, PageID.4-5.) In Count III, Plaintiffs claim that Brunt breached fiduciary duties owed to the Fund and that he was thus personally liable for the full amount of the assessed liability. (*See id.*, PageID.5-6.)

On November 30, 2016, BAI and Brunt filed an Answer and Counterclaim. (*See* Ans. and Countercls., ECF No. 6.) They later twice amended their Counterclaim. (*See* First Am. Countercls, ECF No. 9; Sec. Am. Countercls, ECF No. 28.) The Second Amended Counterclaim asserts five causes of action against Plaintiffs. In Count I, BAI and Brunt allege that Plaintiffs "violated and/or abused" certain statutory procedures and certain policies related to the assessment of withdrawal liability and that those violations precluded the Fund from collecting the liability assessed in this case. (Sec. Am. Countercls, ECF No. 28, PageID.728-732.)

6

In Count II, BAI and Brunt seek a declaration that the Fund's determination that BAI withdrew from the Fund and the Fund's assessment of withdrawal liability are both "void ab initio." (*Id.*, PageID.733-35.)  In Count III, Brunt alleges that Plaintiffs breached fiduciary duties owed to him. (*See id.*, PageID. 736-39.)  In Count IV, BAI and Brunt allege that Plaintiffs are equitably estopped from pursuing the assessed withdrawal liability. (*See id.*, PageID.739-44.)  Finally, in Count V, BAI and Brunt allege that Plaintiffs committed common law fraud and/or misrepresentation. (*See id.*, PageID.744-46.)

## C

In November and December 2018, all three parties filed motions for summary judgment. (*See* Mots., ECF Nos. 58, 59, 62.)   As relevant here, the parties each sought summary judgment on Count I of Plaintiffs' Complaint – the Count alleging that BAI and Brunt owed the full amount of the assessed withdrawal liability because they received the May 24 Notice and failed to timely initiate arbitration. (*See id.*) Plaintiffs, in support of their motion, attached (1) a document from United Parcel Service purporting to show that an envelope containing the May 24 Notice was delivered to BAI on May 25, 2016, and signed for that day by an individual named "Johnson" (*see* ECF No. 62-5, PageID.2093-2094) and (2) an affidavit from Ericka Johnson, a former BAI employee, in which Johnson attested that when she signed for deliveries, she personally handed the delivered letter or package to Brunt

7

personally or put the item on Brunt's chair if he was not present (*see* Johnson Aff. at ¶5 ECF No. 62-3, PageID.2034.)   Plaintiffs contended that Johnson's affidavit was sufficient to establish BAI's receipt of the May 24 Notice. (*See* BAI Mot., ECF No. 62, PageID.2011-2013.)   And Plaintiffs argued that because BAI received the May 24 Notice and failed to timely demand arbitration, BAI and Brunt were liable for the assessed withdrawal liability. (*See id*.)

Brunt and BAI filed separate motions for summary judgment on Count I. BAI, in support of its motion, attached Brunt's affidavit in which Brunt attested that neither he nor any officer or director of BAI ever received the May 24 Notice. (*See* Brunt Aff. at ¶¶ 6, 8 ECF No. 60-4, PageID.1718-1719.)   BAI contended that because it never received the May 24 Notice, its failure to initiate arbitration did not render it liable for the assessed withdrawal liability. (*See* Fund Mot., ECF No. 60, PageID.1709.)   In Brunt's motion, he echoed BAI's contentions and added that even if BAI could be held liable for the withdrawal liability, there was no basis for holding him personally liable for that liability. (*See* Brunt Mot., ECF No. 59, PageID.1437-1442.)

In an Order dated July 11, 2019, the Court granted Brunt's motion for summary judgment. (*See* Order, ECF No. 94.)   The Court agreed with Brunt that Plaintiffs had not established any basis for holding him personally liable for the assessed withdrawal liability. (*See id.*, PageID.3590-3591.)   But the Court held that

8

BAI's liability under Count I could not be determined as a matter of law, and the Court denied Plaintiffs' motion and BAI's motion for summary judgment on that Count. (*See id.*, PageID.3586-3589.)  The Court denied summary judgment to those parties on the ground that there was a question of fact as to whether BAI received the May 24 Notice. (*See id.*)  The Court concluded that it would conduct a bench trial in order to resolve that question. (*See id.*, PageID.3589.)  The Court held that trial on January 14, 2020.  Following the trial, the parties submitted proposed findings of fact and conclusions of law. (*See* ECF Nos. 111, 112, 113, 114.)

### III

Based upon the evidence presented at the bench trial, the Court makes the following findings of fact with respect to the issue of whether BAI received the May 24 Notice:[2]

1. In May of 2016, the Fund determined that BAI effected a complete withdrawal from the Fund within the meaning of Section 4203 of ERISA, 29 U.S.C. § 1583. (*See* Trial Transcript of David Malinowski, attorney of

---

[2] The Court provides selected supporting citations for convenience and as examples of material in the record that support a particular finding. By giving a specific citation, the Court does not mean to imply that the cited evidence is the sole support in the record for a particular finding. All of the Court's findings, whether followed by a specific citation or not, are based upon the totality of the evidence presented at the bench trial.

the Fund, ECF No. 109, PageID.3759, 3789-3790; *see also* May 24 Notice, ECF No. 65-5, PageID.2392.)

2. As a result of that determination, the Fund assessed BAI $4,242,789.00 in withdrawal liability. (*See* May 24 Notice, ECF No. 65-5, PageID.2392.)

3. The Fund then set out to notify BAI of the withdrawal determination and to collect the assessed withdrawal liability. (*See* Malinowski Trial Tr., ECF No. 109, PageID.3759.)

4. The Fund instructed its attorney, David Malinowski, to send BAI a letter informing BAI of the Fund's withdrawal determination and of the amount of the withdrawal liability assessment. (*See id.*, PageID.3759-3760.)

5. Malinowski drafted a letter dated May 24, 2016, and he addressed the letter to BAI. (*See id.*, PageID.3761; *see also* May 24 Notice, ECF No. 65-5, PageID.2392.)  The Court has previously identified that letter as the "May 24 Notice."  In the May 24 Notice, Malinowski wrote that the Fund had concluded that BAI had "effected a withdrawal from the Fund" and that the "withdrawal occurred during the Plan Year beginning May 1, 2015." (May 24 Notice, ECF No. 65-5, PageID.2392.)  Malinowski also identified the amount of withdrawal liability determined to be owed by BAI: $4,242,789.00. (*See id.*)  Finally, Malinowski demanded that BAI pay the withdrawal liability in accordance with a payment schedule that

Malinowski included with the May 24 Notice. (*See* Payment Schedule, ECF No. 65-5, PageID.2394.)

6. Malinowski listed BAI's address on the May 24 Notice as 48953 Wixom Tech Dr, Unit D, Wixom, MI 48393. (*See* May 24 Notice, ECF No. 65-5, PageID.2392.)  He found that address by searching a database operated by the State of Michigan Department of Licensing and Regulatory Affairs. (*See* Malinowski Trial Tr., ECF No. 109, PageID.3761.)

7. On both May 24, 2016, and the following day (on which, as described below, the May 24 Notice was delivered), BAI was located at, and doing business from, 48953 Wixom Tech Drive in Wixom, Michigan. (*See* Brunt Trial Tr., ECF No. 109, PageID.3803-3804.)   BAI had also listed its address as "48953 Wixom Tech Dr., Wixom, MI 48393" on monthly status reports provided to the Fund in April and May of 2016. (*See id.*; *see also* Status Rpts., ECF No. 28-1, PageID.750, 753.)

8. Malinowski directed his assistant, Mindy Kolp, to send the May 24 Notice to BAI via United Parcel Service ("UPS"). (*See* Malinowski Trial Tr., ECF No. 109, PageID.3763.)

9. Ms. Kolp completed a UPS shipping form to direct UPS where to deliver the May 24 Notice. (*See id.; See also* UPS Shipping Label, Pls.' Trial Ex. 1.)  On that form, she directed UPS to deliver the UPS envelope containing

to May 24 Notice to: Brian Brunt, Brunt Associates, Inc., 48953 Wixom Tech Dr., Unit D, Wixom, MI 48393. (*See* UPS Shipping Label, Pls.' Trial Ex. 1.)

10. On May 24, 2016, Ms. Kolp placed the May 24 Notice in a UPS Next Day Air envelope and caused the letter to be delivered to UPS for shipment to BAI.  (*See* Malinowski Trial Tr., ECF No. 109, PageID.3763.)

11. On May 25, 2016, at or about 10:16 a.m., an unidentified UPS employee delivered the UPS envelope containing the May 24 Notice to BAI's facility on Wixom Tech Drive in Wixom, Michigan. (*See* UPS Shipping Label, Pls. Trial Ex. 1; *see also generally* Trial Transcript of UPS witness Bob Isenegger, ECF No. 109, PageID.3733-3757.)

12. The UPS employee accomplished this delivery by handing the UPS envelope containing the May 24 Notice to Ericka Johnson, a BAI employee. (*See id.*)

13. Johnson had worked at BAI for approximately three and a half years. (*See* Johnson Trial Tr., ECF No. 110, PageID.3875.)  In 2016, she worked as a shop worker. (*See id*.)  In that capacity, she worked in the shop area of BAI's Wixom Tech Drive facility. (*See id*., PageID.3874-3875.)  That area was distinct from the front office portion of the facility. (*See id.*)

14. On May 25, 2016, Johnson and Brunt were the only BAI employees performing work at BAI's Wixom Tech Drive facility. (*See* Brunt Trial Tr., ECF No. 109, PageID.3840.)

15. Johnson's receipt of the UPS envelope containing the May 24 Notice was not unusual. Indeed, she routinely received and signed for a variety of deliveries to BAI, and she considered that to be one her job duties. (*See* Johnson Trial Tr., ECF No. 110, PageID.3885.) In fact, she received letters sent to BAI on an almost daily basis. (*See id.*, PageID.3902) The deliveries would come to Johnson in the shop when the front office area was unoccupied or when, during the hot summer months, BAI would prop open the door to the shop area. (*See id.*, PageID.3900-3901.)

16. Nobody at BAI objected to Johnson's practice of receiving and signing for deliveries. Her manager for many years, Dave Adair, saw her accept deliveries on a regular basis, and he never told her not to accept deliveries. (*See id.*, PageID.3880.) Moreover, BAI did not have any policy – written or otherwise – that prohibited its employees from accepting deliveries of letters and packages. (*See* Brunt Trial Tr., ECF No. 109, PageID.3831.) And Brunt never instructed Johnson not to accept deliveries. (*See id.*, PageID.3846.) Thus, as Brunt conceded during his testimony, he would

13

not have objected if he had seen Johnson accepting deliveries. (*See id.*, PageID.3842).

17. Johnson had a standard practice that she followed when she received a delivery. (*See* Johnson Trial Tr., ECF No. 110, PageID.3882.) If the letter or package was addressed to a specific person at BAI, such as to Brunt personally, she would take it directly to that person. (*See id.*, PageID.3382-3883.) And if the person was not present, she would leave the letter or package on their desk or chair. (*See id.*, PageID.3883.) If the letter or package was addressed generally to BAI, she would take it to the reception area in the front office. (*See id.*, PageID.3883-3884.)

18. In late May 2016, Johnson slightly modified her regular practice with respect to the handling of deliveries that she received. (*See id.*, PageID.3885.) During the final days of that month, BAI was in the process of moving to a new facility on Avante Drive in Wixom, Michigan, and BAI's office furniture had been removed from its Wixom Tech Drive facility. (*See id.*, PageID.3884-3885.) With the furniture gone, when Johnson received a letter addressed to a specific person at BAI in that person's absence, she could no longer leave the letter on the person's chair. So, in late May 2016, when she received a letter addressed to a specific person who was absent from the office, she would place the letter in the

14

area of the front office that was still being used to operate the business. (*See id.*, PageID.3885.) More specifically, once the furniture had been removed, Johnson would place letters that she received on a countertop in the front reception area. (*See id.*, PageID.3906-3907.) This countertop was the "hub" of the company's operations at that time. (*Id.*, PageID.3906-3907.)

19. Brunt was not present on May 25, 2016, when Johnson received the UPS envelope containing the May 24 Notice. Consistent with the modified standard practice that Johnson adopted when the furniture was removed from BAI's offices, Johnson placed the UPS envelope containing the May 24 Notice on the countertop in the front reception area. Thus, on May 25, 2016, the UPS envelope containing the May 24 Notice made it to the "hub" of BAI's business operations.[3]

20. Even though Johnson placed the May 24 Notice on the countertop in BAI's front reception area, Brunt did not personally receive it, nor was he aware that it had been delivered. (*See* Brunt Trial Tr., ECF No. 109, PageID.3806.)

---

[3] Johnson did not specifically testify to the matters set forth in paragraph 19 above. In fact, she testified that she had no specific memory of handling the UPS envelope containing the May 24 Notice. The findings in paragraph 19 above are based upon reasonable inferences drawn from Johnson's general testimony about how she dealt with deliveries in Brunt's absence during the latter portion of May 2016.

21. It appears that the May 24 Notice may have gotten lost as BAI was in the process of moving to its new facility.

22. Neither Brunt nor any other officer or director of BAI ever personally received the May 24 Notice. (*See id.*)

23. In the ninety days following May 25, 2016, BAI did not respond to the May 24 Notice, did not communicate with the Fund in any way concerning the contents of that letter, and did not initiate arbitration to challenge the Fund's assessment of withdrawal liability.  This is undisputed.

## IV

## A

In light of the findings of fact above, the Court now makes the following conclusions of law:

1. As noted above, the assessment of withdrawal liability under the MPPAA follows a series of steps.  First, once the plan sponsor determinates that an employer has withdrawn, the sponsor gives the employer the notice required under 29 U.S.C. §§ 1382, 1399(b)(1).  Second, the employer has ninety days from its receipt of proper notice to ask the plan sponsor to review the determination and assessment of withdrawal liability and to consider additional information supplied by the employer. *See* 29 U.S.C § 1399(b)(2)(A).  Third, the plan sponsor reviews the concerns timely raised

by the employer. *See* 29 U.S.C. § 1399(b)(2)(B). Finally, if a dispute remains following the plan sponsor's review, then the employer has sixty days to initiate arbitration proceedings. *See* 29 U.S.C. § 1401(a)(1)(A). An employer's failure to timely initiate arbitration proceedings renders the employer liable for the full amount of the assessed withdrawal liability. *See* 29 U.S.C. § 1401(b)(1).

2. The Fund satisfied the notice requirements under 29 U.S.C. §§ 1382, 1399(b)(1) by sending the May 24 Notice to BAI. The May 24 Notice contained all of the essential elements of a notice of withdrawal liability: the amount of the liability, a payment schedule for the liability payments, and a demand for payment in accordance with the schedule. Moreover, the manner in which the Fund transmitted the May 24 Notice – sending it via UPS delivery addressed to Brunt at the address (a) that BAI provided the Fund on monthly status reports in April and May of 2016 and (b) to which Brunt reported on a near-daily basis at the time of the notice – was a reasonable and acceptable way of providing the notice.[4]

---

[4] It appears that the Fund may have erroneously included in the address line of the UPS envelope that the envelope should be delivered to "Unit D" at the Wixom Tech Drive facility. There is no "Unit D" at that location. But that error was immaterial because, as described fully above, UPS successfully delivered the May 24 Notice to BAI at the Wixom Tech Drive facility.

3. Under the totality of the circumstances, BAI received the May 24 Notice for purposes of 29 U.S.C. § 1399(b)(1) on May 25, 2016, when Johnson accepted delivery of the letter and placed it on the countertop in the BAI reception area. The circumstances that support this finding include: Johnson was BAI's only employee – other than Brunt – who was working at the Wixom Tech Drive facility at the time the May 24 Notice was delivered; Johnson had previously accepted other similar deliveries without objection; it was a routine part of Johnson's job to accept deliveries of letters and packages; none of Johnson's supervisors, including Brunt, ever told her not to accept deliveries; BAI did not have a policy that prevented Johnson from accepting deliveries; and the countertop on which Johnson placed the May 24 Notice was the "hub" of BAI's business operations at the Wixom Tech Drive facility. The Court concludes that under these unique circumstances, BAI received the May 24 Notice on May 25, 2016.

4. Since BAI neither timely asked the Fund to review its assessment nor initiated arbitration in the time period required under 29 U.S.C. § 1401(a)(1)(A), BAI is obligated to pay the Fund the full amount of the assessed withdrawal liability – unless BAI prevails on its counterclaims.

**B**

BAI resists these conclusions of law on two primary grounds. Neither persuades the Court to alter the conclusions.

First, BAI contends that the manner in which the Fund transmitted the May 24 Notice – via UPS delivery addressed to Brunt – was not a sufficient means of providing notice of withdrawal liability under 28 U.S.C. § 1399(b)(1), and thus BAI should not be deemed to have received the notice. BAI insists that a plan sponsor must provide notice in the same manner that process is formally served under Rule 4 of the Federal Rules of Civil Procedure. (*See* BAI Findings, ECF No. 112, PageID.4028-4030; BAI Trial Br., ECF No. 114, PageID.4064-4066.) But BAI does not cite any case in which any court has so held, and several courts have noted that "formal service of the notice [of withdrawal liability] is not required." *Trustees of the Local 813 Pension Trust Fund v. Canal Carting, Inc.*, 2014 WL 843244, at * 10 (E.D.N.Y. Mar. 4, 2014); *Trustees of the Road Carriers Local 707 Pension Fund v. J.R.S. Trucking Serv., Inc.*, 2015 WL 10487716, at *5 (Nov. 10, E.D.N.Y. 2015) (report and recommendation) (same), adopted at 2016 WL 1064518 (Mar. 15, 2016 E.D.N.Y. 2016). Another court has explained that "the language" of 28 U.S.C. § 1399(b)(1) "does not … require the plan sponsor to formally 'serve' the notice [of withdrawal liability] on the employer." *Miller v. Collectron Corp.*, 1999 WL 730981, at *6 (E.D.N.Y. Sept. 16, 1999). Instead, 28 U.S.C. § 1399(b)(1) requires

only that the plan sponsor "notify" the employer of the withdrawal liability determination, assessment, and payment schedule.  Because this notice provision "is to be liberally construed to protect pension plan participants," *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 175 (3d Cir. 2002), this Court joins the other courts that have concluded that formal service of a notice of withdrawal liability is not required.

Second, BAI contends that Johnson's receipt of the May 24 Notice cannot be deemed as BAI's receipt of that letter under the doctrine of apparent authority. (*See* BAI Findings, ECF No. 112, PageID.4029-4030.)  BAI appears to contend that Johnson lacked apparent authority to take receipt of the May 24 Notice because BAI did not take any steps to suggest to third parties that she was authorized to receive deliveries. *See*, *e.g.*, *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998) (explaining that a principal "cloaks" an agent with apparent authority where the principal holds "the agent out to third parties as possessing sufficient authority to commit the particular act in question").  But the Court is not treating Johnson's receipt of the May 24 Notice, standing alone, as BAI's receipt of the letter. Rather, the Court deems BAI to have received the May 24 Notice when Johnson – acting in a manner consistent with longstanding practices while employed at BAI – accepted the letter and delivered it to the "hub" of BAI's operations at a time when

20

Brunt, a BAI officer, was the only other BAI employee working at the Wixom Tech Drive facility.

Another Judge of this Court found that an employer had received notice of withdrawal liability under similar circumstances. *See Trustees of Carpenters Pension Tr. Fund-Detroit & Vicinity v. Cimarron Servs., Inc.*, 2008 WL 126588 (E.D. Mich. Jan. 14, 2008). In *Cimarron*, the plan sponsors sent notice of withdrawal liability to the employer's registered address by certified mail. The mailing was accepted by someone at that address, but the employer denied that its officers or directors actually received the notice. The court held that the receipt of the mailing was sufficient to put the employer on notice.

The case for receipt here is even stronger than in *Cimarron*. Here, we know that the May 24 Notice actually made it to the "hub" of BAI's managerial operations, while in *Cimarron* the court knew only that someone had accepted the certified mail envelope containing the notice. *Cimarron* therefore supports the Court conclusion that BAI received the May 24 Notice on May 25, 2016.

BAI has not cited any case in which a court has found that an employer did not receive a notice of withdrawal liability under circumstances like those presented here. BAI directs the Court to *Beasley v. George Wollman, Inc.*, 1986 WL 4827 (E.D. Pa. Apr. 18, 1986), but the decision in that case is easily distinguishable. The plan sponsor in *Beasley* sent a notice of withdrawal liability to an employer by

21

certified mail, and the certified mailing was returned as undeliverable. *See id* at *1. Nonetheless, the plan sponsors argued that the employer should have been deemed to have received the notice. *See id*. at *2. The court rejected that contention. Here, in sharp contrast to the certified letter in *Beasley*, the May 24 Notice was delivered to BAI and ended up in BAI's "hub." Given the material distinction between *Beasley* and this case, *Beasley* does not support BAI's contention that it did not receive the May 24 Notice.

Finally, BAI contends that it would be fundamentally unfair to deem it to have received the May 24 Notice. BAI notes that an employer's receipt of a notice of withdrawal liability has very serious consequences – i.e., receipt starts "the clock" on the employer's opportunity to contest the liability of the assessment. And BAI argues that because the stakes attendant to receipt are so high, receipt of a notice of withdrawal liability by a lower-level, non-managerial employee of the employer cannot reasonably be deemed to constitute "receipt" by the employer under 29 U.S.C. § 1399(b)(2). BAI insists that such "receipt" does not occur until an officer or director of an employer *actually receives* a notice of withdrawal liability. According to BAI, unless an officer or director of the employer receives the notice, the employer has no real opportunity to respond to it. There is real force to this contention. Indeed, there may be many cases in which it would be fundamentally

unfair to deem an employer to have "received" a notice of withdrawal liability where the notice was delivered to a lower-level employee of the employer.

But this is not such a case. Under the unique circumstances that exist here, it is not fundamentally unfair to deem BAI to have received the May 24 Notice. BAI could have adopted a policy or rule prohibiting employees like Johnson from accepting deliveries of important materials, but it did not. On the contrary, Johnson's supervisor never instructed her not to receive or sign for deliveries. (*See* Johnson Trial Tr., ECF No. 110, PageID.3880.) And she regularly did so. (*See id.*, PageID.3879-80.) Moreover, Brunt conceded that he would not have objected if he had seen her accept deliveries. (*See* Brunt Trial Tr., ECF No. 109, PageID.3846.) Just as importantly, Johnson delivered the May 24 Notice directly to the "hub" of BAI's operations at a time when a BAI officer (Brunt) was regularly present in that hub, and that delivery was sufficient to give BAI's officers and directors a fair opportunity to review and address the notice. Under these particular circumstances, it is not fundamentally unfair to deem BAI to have received the May 24 Notice when Johnson delivered it to BAI's reception area.

For all of these reasons, BAI has not persuaded the Court to alter any of its conclusions of law.

## V

For all of the reasons described above, the Court concludes that BAI is obligated to pay the full amount of the assessed withdrawal liability to the Fund – unless BAI prevails on its counterclaims. The Court will now schedule a status conference with the parties to discuss the next steps with respect to those claims.

**IT IS SO ORDERED**.

s/Matthew F. Leitman<br>
MATTHEW F. LEITMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: August 5, 2020


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 5, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda<br>
Case Manager<br>
(810) 341-9764